UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                                            CRIMINAL NO. 3:07cr31-DPJ-LRA

JON DALE ADAMS

**ORDER**

This criminal matter is before the Court on Defendant Jon Dale Adams' motion to vacate pursuant to 28 U.S.C. § 2255. The Court, having fully considered the parties' submissions and the applicable law, finds that the motion is not well taken and should be denied without evidentiary hearing.

I.   Facts/Procedural History[1]

Defendant Jon Dale Adams was charged in a two-count indictment for violations of 26 U.S.C. § 7206(1) (2002), which makes it a crime for anyone to

> [w]illfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.

Count I charged Defendant with filing a Form 1040X amended return for tax year 1999 that was accompanied by a false Schedule C, a tax form used to report "Profit or Loss From Business." Count II charged Defendant with filing a false Schedule C in conjunction with his Form 1040 for the year 2000. A jury found Defendant guilty of both counts, but the conviction related to his

---

[1]This matter is the subject of a lengthy opinion from the Fifth Circuit which provides a detailed and accurate account of the factual and procedural history of the case. *See United States v. Adams*, 314 F. App'x 633 (5th Cir. 2009). The Court will therefore provide a general overview.

1

1999 1040X (Count I) was overturned. The conviction as to tax year 2000 was affirmed. Adams now seeks to vacate the remaining conviction.

Adams' § 2255 motion is largely based on the disputed business activities of an adult entertainment establishment known as the Stardust Oasis. Although Adams reported gross receipts of $400,423 in 2000, some $66,000 less than the Government contended that he earned, Adams suggests that those funds were actually earned in prior tax years (presumably without reporting the income). He further argues that the Stardust Oasis could not be the revenue source in 2000 as the Government contended, because he closed it before 2000. Adams made these same arguments at trial and on direct appeal. Based on these disputed facts, Adams now raises the following arguments: (1) that the Government failed to adequately investigate whether the Stardust Oasis was open in 2000; (2) that the Government failed to produce unspecified *Brady/Giglio* material; (3) that his trial counsel was ineffective in failing to better prove that the Stardust Oasis was closed in 2000; and (4) that his appellate counsel was somehow ineffective.

II.     Analysis

Section 2255(a) of Title 28 of the United States Code allows "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on various enumerated grounds. As a threshold matter, the movant must be "in custody" for the Court to consider the motion. However, the term "in custody" has been interpreted broadly to apply when the movant is subject to restraints "not shared by the public generally." *Jones v. Cunningham*, 371 U.S. 236, 240 (1963). Incarceration is not required. *Id.*

Here, Adams has been sentenced and has exhausted his direct appeal, but he remains on bond pursuant to this Court's stay of his report date. Adams remains confined in his movements and must appear and surrender as directed by the Court. He is further subject to twelve additional restrictions on his freedoms not experienced by other citizens. *See* Order Setting Conditions of Release [7]. These facts are remarkably similar to those present in *Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County, California*, where the United States Supreme Court found that the defendant who was released post-sentencing was "in custody" for purposes of habeas corpus. 411 U.S. 345, 351 (1973). The Court has considered this issue sua sponte and concludes that jurisdiction exists to hear Adams' motion.

A. Adequacy of the Government's Investigation

Defendant argued throughout the trial and on direct appeal that the Government's investigation of the source of his 2000 income was lacking because it failed to fully account for Adams' claim that the Stardust Oasis was closed in 2000. He makes that same argument in his § 2255 motion.

As noted by the Fifth Circuit Court of Appeals in deciding Adams' direct appeal, the Government chose to present a circumstantial case at trial pursuant to the so called "cash receipts bank deposits" method. The nuances of this procedure are stated at length in the Fifth Circuit's opinion, but the basic concepts are as follows:

> First, the government must demonstrate with reasonable certainty the taxpayer's cash on hand at the beginning of the tax year in question. Second, the government has the burden of proving that the receipts in question were taxable. Supreme Court precedent permits the government to satisfy this second burden in either of two ways: It can show that there is a likely taxable source of the unreported income, or it can negate all possible nontaxable sources of income.

*Adams*, 314 F. App'x at 645 (quotation marks and citations omitted).

At trial, this Court concluded that the Government's investigation complied with these requirements and was sufficient to present the matter to the jury. *See United States v. Boulet*, 577 F.2d 1165, 1170 (5th Cir. 1978) ("[A]s a matter of law the court must be satisfied in a circumstantial evidence type case that the opening cash balance is established with reasonable certainty. If this is done, then the further question remains whether guilt has been proved beyond reasonable doubt."). Adams appealed that ruling, arguing that the Government should have better investigated the status of the Stardust Oasis. The Fifth Circuit Court of Appeals rejected Adams' argument, holding that the investigation was adequate. *Adams*, 314 F. App'x at 648. Moreover, the Fifth Circuit expressly stated that the Government, having established cash on hand and eliminated non-taxable sources for the year 2000 income, was not required to prove or disprove that the funds were generated at the Stardust Oasis. *Adams*, 314 F. App'x at 648 ("Given this conclusion [that the investigation was adequate], the government was under no obligation to demonstrate an adequate investigation into likely income sources."). The court reached this conclusion even assuming that the Government had stipulated that the Stardust Oasis was the source of income in 2000. *Id*.

Because Defendant raised the adequacy of the investigation on direct appeal, he is barred from raising it again in a collateral attack. *See, e.g.*, *United States v. Kalish,* 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

B. Alleged *Brady/Giglio* Violations

Adams claims certain discovery violations. Pursuant to *Brady v. Maryland*, the Government must disclose exculpatory evidence which is "material either to guilt or to punishment." 373 U.S. 83, 87 (1963). *Giglio v. United States* explained that certain impeachment material falls within *Brady*. 405 U.S. 150, 154 (1972). In the present case, Adams' initial motion never actually identified the evidence he claims the Government should have produced. Instead, he argued that *either* the government failed to adequately investigate the status of the Stardust Oasis *or* it did investigate and withheld the information. The argument is not persuasive.

To establish a *Brady* claim, a claimant must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable, and (3) the evidence was material. *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (citations omitted). In assessing the materiality of suppressed evidence, the Supreme Court has explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Adams has not satisfied the first or third prongs of the test.[2]

As to the first prong, there is no indication that the prosecution suppressed evidence related to the Stardust Oasis. Adams' initial memorandum failed to identify the subject evidence, posing instead the hypothetical suggestion that if the investigation was truly sufficient, then the Government must have uncovered proof that the Stardust Oasis was closed in 2000 and failed to produce it. This argument first fails because the sufficiency of the investigation does

---

[2]Proof of the second prong also appears lacking, but given the nature of the other two, no decision is required.

5

not require proof of this fact. The Fifth Circuit observed on appeal that, even assuming a stipulation that Adams' 2000 income derived from the Stardust Oasis, the Government was under no duty to further investigate or prove that the establishment was the actual source. *Adams*, 314 F. App'x at 648 (holding that "the government was under no obligation to demonstrate an adequate investigation into likely income sources").

Moreover, there is no duty to produce that which the defendant already possesses or can obtain. *See Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994), 513 U.S. 1137 (1995) *cert. denied*,("A Brady violation does not arise if the defendant, using reasonable diligence, could have obtained the information"). Adams argues that evidence related to the status of the Stardust Oasis in 2000 was readily apparent, such as an injunction against adult entertainment activities, a newspaper article, and affidavits from various potential witnesses. In his reply, Adams claims the injunction constituted *Brady* material. This is the only specific document for which a *Brady* claim is made, but it, and the other evidence related to the year 2000 status of the Stardust Oasis, would have been known to Adams before trial.[3]

As to the third prong, the evidence was not material. In assessing the materiality of suppressed evidence, the Supreme Court has explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

---

[3]The only discovery issue raised during trial or on appeal related to the investigating agent's report. Adams' trial counsel pressed the Government at trial to produce further discovery, leading the Court to review the agent's report in camera. The Court then required production of those statements that were (1) within the scope of direct examination and not merely a summary of what had been produced, with no reflection of his analysis; (2) production of statements with impeachment value; and (3) production of any statements that might intermingle that which would be discoverable and that which would not. *Adams*, 314 F. App'x at 652. Defendant received the entire file post-trial and appealed the decision to withhold certain materials. The Fifth Circuit rejected the appeal. *Id.*

proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* A "reasonable probability" of a different result is only shown when the nondisclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (footnote omitted). In this case, the Government's investigating agent was vigorously cross-examined regarding evidence that the Stardust Oasis was closed in 2000. Moreover, as the Government notes in its response, there can be no prejudice because the Fifth Circuit found no duty to prove the source of taxable income. *Adams*, 314 F. App'x at 648. Adams fails to respond to this argument in the Government's response, an argument with which this Court agrees.

    C.    Ineffective Assistance of Counsel

Adams claims that his trial and appellate counsel were constitutionally ineffective. A § 2255 motion is the proper vehicle for raising such a claim. Earlier this year, the Fifth Circuit Court of Appeals provided a thorough review of the substantive law in *United States v. Fields*, noting:

> The Sixth Amendment guarantees defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001); *see Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough*, 540 U.S. at 5, 124 S. Ct. 1 (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)). We review claims of ineffective assistance of counsel under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).
>
>     To satisfy this test, a petitioner "[f]irst ... must show that [his] counsel's performance was deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. "This requires showing that counsel made errors so serious that counsel was not

7

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S. Ct. 2052. Second, the petitioner "must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S. Ct. 2052. "This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* To do so, the petitioner "must show that there is a reasonable probability that, but for counsel"s unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Importantly, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. When evaluating the first *Strickland* criterion, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *accord Bridge*, 838 F.2d at 773. Further, we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052.

We have explained that the objective standard of reasonableness to which counsel are held requires that they "'research relevant facts and law, or make an informed decision that certain avenues will not be fruitful.'" *Conley*, 349 F.3d at 841 (quoting *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000)).

565 F.3d 290, 293–95 (5th Cir. 2009).

Adams' main contention is that his trial counsel failed to adequately investigate the status of the Stardust Oasis and thereafter failed to present enough evidence demonstrating that it was closed in 2000. The record demonstrates that trial counsel gathered and presented a substantial amount of evidence related to the status of the Stardust Oasis. Although not all efforts were fruitful, like subpoenaing records from beer distributors, the jury heard the following: (1) cross-examination of the investigating agent regarding Adams' claim that the establishment was closed in 2000; (2) the absence of credit card transactions related to the facility; (3) the absence of beer purchases and other bar items; (4) the lack of claimed business expenses; and (5) the lack of sales taxes paid by Stardust Oasis to the State of Mississippi.

8

Adams now points to additional evidence, including an injunction against adult entertainment activities, a newspaper article indicating that the Stardust Oasis had closed,[4] and various affidavits from potential witnesses. However, trial counsel claims that he met with Adams numerous times and none of this was discussed. Additionally, the injunction would not have prevented Adams from operating a bar at the Stardust Oasis and therefore did not help to establish that it had been closed altogether. Finally, some of the evidence Adams now raises would have, in his trial counsel's opinion, not been fruitful and would have highlighted the possibility that Adams had lied in conjunction with his bankruptcy petition and the investigation of this matter. Ultimately, the Court finds that Adams has not overcome the "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (citations omitted).[5]

Even assuming that counsel was ineffective, Adams has not demonstrated prejudice. As stated, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Several rulings from the direct appeal close this door. First, the Fifth Circuit held that the Government's investigation of non-taxable income was "sufficiently thorough." *Adams*, 314 F. App'x at 648. Second, the Government was "under no obligation to demonstrate an adequate investigation into likely income sources," such as the Stardust Oasis. *Id*. It was enough that the Government established the cash on hand at the

---

[4] The article would have constituted hearsay. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that newspaper articles are "classic, inadmissible hearsay").

[5] The preceding obviously relates to trial counsel. Although Adams also states that appellate counsel was lacking, nothing in the record supports that suggestion.

9

beginning of the year and that the unreported income did not derive from non-taxable sources. *Id.* This ruling is perfectly consistent with the jury instructions given at the close of evidence, which placed no duty on the Government to establish the source of the taxable income. Third, the evidence presented to the jury was sufficient to sustain the verdict as to Count II. *Id.* at 648-49. Based on these core rulings, the conviction would stand even with conclusive proof that the Stardust Oasis was closed in 2000. All of this is prominently argued in the Government's response to Adams' § 2255 motion, but Adams offers no rebuttal. The Court finds the Government's position persuasive and finds a clear lack of prejudice.

        D.        Request for Hearing

Section 2255(b) provides that an evidentiary hearing should be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." In the present case, the Court has the benefit of the parties' submissions, the evidence Adams claims his attorney should have presented, affidavits from Adams' attorneys, the record below, and the Fifth Circuit's opinion on direct appeal. Ultimately, the greatest obstacle to Adams' § 2255 motion is the holdings on direct appeal. For the reasons stated above, the Fifth Circuit's holdings bar the argument that the Government's investigation was insufficient and preclude a finding of prejudice as to the *Brady/Giglio* and ineffective assistance of counsel arguments. Tellingly, Adams fails to ever address these issues, despite the Government's heavy reliance on them. Under these circumstances, the files and records of the case conclusively establish that relief is not warranted. Accordingly, the Court denies the request for a hearing.

IT IS, THEREFORE ORDERED, that Defendant's motion to vacate is DENIED. Defendant is ordered to report to the facility designated by the Bureau of Prisons no later than noon on March 1, 2010.

**SO ORDERED AND ADJUDGED** this the 4th day of January, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE